UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY BAYIYANA NAKITYO<br>A/K/A MARY LARKIN,<br>5 Riverhurst Rd. Apt. 611<br>Billerica, MA 01821,<br><br>WILLIAM WAGUMBULIZI<br>5 Riverhurst Rd. Apt. 611<br>Billerica, MA 01821<br>      Plaintiffs,<br><br>  v.<br><br>MERRICK GARLAND,<br>Attorney General of The United States, In his Official<br>Capacity, 950 Pennsylvania Avenue,<br>NW, Washington, DC 20530,<br><br>ALEJANDRO MAYORKAS,<br>Secretary of the Department of Homeland Security,<br>in his official capacity, 1300 Pennsylvania Avenue<br>NW, Washington, DC 20528<br><br>TRACEY RENAUD,<br>Acting Director of U.S. Citizenship & Immigration<br>Services, In Her Official Capacity, 111 Massachusetts<br>Ave. NW, Washington, DC 20001<br><br>KRISTEN M. SMITH, In Her Official Capacity<br>U.S. Citizenship & Immigration Services<br>Lawrence, Massachusetts Field Office Director,<br>2 Mill Street, Lawrence, MA 01840<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

(Violation of Immigration and Nationality Act, Administrative Procedure Act, Due Process)

1

## INTRODUCTION

### *Procedural Posture*

1. This case concerns the United States Citizenship and Immigration Services ("USCIS") and its ultra vires application of 8 U.S.C. §1367(a) to rescind an approved family based immediate relative visa petition ("Petition") of which Mary Bayiyana Nakityo ("Plaintiff" or "Mrs. Nakityo") was the beneficiary of. In revoking the Petition, the USCIS relied on protected information that was prohibited under 8 U.S.C. § 1367(a) and the regulations promulgated thereunder. This extralegal information was used as a "but for" catalyst to invoke 8 U.S.C. § 1154(c) which revoked said approved Petition and permanently barred the Plaintiff from being the beneficiary of any future visa petitions filed on her behalf. The USCIS took this Draconian measure because of purported prior marriage fraud the Plaintiff allegedly engaged in. 8 U.S.C. § 1154(c) (2018) states in pertinent part:

> "[N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded...by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws...."

2. If the revocation of this Petition is sustained, which was predicated on the misuse of statutorily prohibited information it will for all practical purposes permanently bar Plaintiff from ever adjusting her status and becoming a lawful permanent resident of the United States. Plaintiff, exhausting all administrative remedies is rendered without recourse, save this instant Action.

*Factual Synopsis*

3. Ms. Nakityo is married to William Wagumbulizi ("Mr. Wagumbulizi") a United States citizen. They have a five-year-old child together. They live together and are domiciled in Billerica, Massachusetts. On December 16, 2016 Mr. Wagumbulizi filed a form I-130 Petition for Alien Relative (again "Petition"), seeking to classify Mrs. Nakityo as an immediate relative pursuant to 8 U.S.C. § 1151(2)(A)(i). Upon approval of the Petition Mrs. Nakityo would be able to adjust her status to a lawful permanent resident of the United States and receive her "green card". The Petition was approved by the USCIS on April 21, 2017.

4. On August 31, 2017 the USCIS sent Mr. Wagumbulizi a "Notice of Intent to Revoke" or "NOIR" indicating that the USCIS was intending to revoke the recently approved Petition because the USCIS purportedly had "substantial and probative evidence" in the Plaintiff's file that Plaintiff previously attempted to evade immigration laws by entering into a sham marriage with her prior spouse Jason Larkin ("Mr. Larkin").

5. Mr. Larkin's 2009 visa petition filed on behalf of Mrs. Nakityo with the USCIS was withdrawn before the USCIS by Mr. Larkin. Mrs. Nakityo subsequently filed a self-petition under the Violence Against Women's Act (VAWA) of 1994, Public Law 103-322 predicated on the physically and sexually abusive marriage Mrs. Nakityo suffered at the hands of Mr. Larkin. Ultimately, the USCIS revoked Mr. Wagumbulizi's Petition based on Mr. Larkin's uncorroborated assertions that his marriage to Mrs. Nakityo was a sham. Using these uncorroborated statements was in clear violation of 8 U.S.C. § 1367(a) and the regulations promulgated thereunder.

3

6.  Mr. Wagumbulizi appealed the USCIS decision to the Board of Immigration Appeals ("BIA"). The BIA affirmed the decision of the USCIS. Plaintiffs, left without administrative recourse, therefore bring this current Action.

## JURISDICTION AND VENUE

7.  This case arises under the United States Constitution; the Administrative Procedures Act ("APA"), 5 U.S.C. §701 et seq.; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq. and its implementing regulations.

8.  This Court has jurisdiction under 28 U.S.C. § 1331 wherein the application of the INA, specifically 8 U.S.C. § 1367(a) and 8 U.S.C. § 1154(c) present a case or controversy of a federal question.

9.  Venue is proper in the United States District Court for the District of Massachusetts under 28 U.S.C. § 1391(e) as a substantial part of the events or omissions giving rise to the claim occurred in this District and the Plaintiffs reside in this District, and this does not involve a dispute over real property.

## PLAINTIFFS

10.  Plaintiff, William Wagumbulizi, is an individual domiciled in the Commonwealth of Massachusetts at 4 Riverhurst Road, Apt. 233, Billerica, MA 01821.

11.     Plaintiff, Mary Bayiyana Nakityo a/k/a Mary Larkin, is an individual domiciled in the Commonwealth of Massachusetts at 4 Riverhurst Road, Apt. 233, Billerica, MA 01821.


# DEFENDANTS

12.     Defendant Merrick Garland, Robert F. Kennedy Department of Justice Building, 950 Pennsylvania Avenue, NW, Washington D.C. 20530, is sued in his official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, oversees the Board of Immigration Appeals ("BIA") (the appellate immigration court system), and is empowered to grant relief.

13.     Defendant Alejandro Mayorkas, St. Elizabeth's West Campus Washington D.C. 20528, is sued in his official capacity as the Secretary of the Department of Homeland Security ("DHS"). In this capacity, he directs each of the component agencies within DHS, including the United States Citizenship and Immigration Services ("USCIS"). In his official capacity, Defendant Mayorkas is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103 and is empowered to approve and revoke visa immigrant visa petitions.

14.     Defendant Tracey Renaud, 111 Massachusetts Avenue NW, Washinton D.C. 20001, is sued in her official capacity as the Acting Director of the United States Citizenship and Immigration Services, which is the agency that, through its adjudicating officers, conducts interviews and approves or denies immigrant visa petitions.

15.     Defendant Kristen M. Smith, 2 Mill Street Lawrence, Massachusetts 01840, is sued in her

official capacity as the Field Office Director of the Lawrence, Massachusetts USCIS field office.

In this capacity, she is responsible for the adjudication of immigrant visa petitions filed by

petitioners domiciled in Billerica, Massachusetts.

## FACTS

16.     In 1994, Congress enacted the Violence Against Women Act ("VAWA"), Public Law

103-322, to combat violence and crimes against women on the streets and in homes. Congress

referred to VAWA as "an essential step in forging a national consensus that our society will not

tolerate violence against women" and its harmful consequences.  S. Rep. No. 103-138, at 41-42

(1993).  The INS General Counsel's office recognized this goal, stating that "VAWA was

enacted to end a battering spouse or parent's control over the petitioning process and thus

remove the petition as a means of controlling or intimidating an abused spouse or child." *Paul*

*Virtue, Office of General Counsel, "Extreme Hardship" and Documentary Requirements*

*Involving Battered Spouses and Children, Memorandum to Terrance O'Reilly, Director, INS*

*Administrative Appeals Office (Oct. 16, 1998)*

17.     Two years later in 1996 Congress passed the Illegal Immigration Reform and Immigrant

Responsibility Act (IIRIRA), Public Law 104-208. In addition to enhancing VAWA protections

and providing new protections and benefits for immigrant survivors of domestic violence, in

IIRIRA Congress crafted special protections for VAWA applicants to prevent abusers from

manipulating the immigration system and sabotaging legitimate VAWA claims. See H.R. Rep.

No. 109-3402, at 122 (2005) ("These provisions are designed to ensure that abusers and

criminals cannot use the immigration system against their victims."). Among other things, these special provisions prohibit the government from making an adverse admissibility or removability decision using information furnished solely by the abuser. 8 U.S.C. § 1367(a).

18.    This statute 8 U.S.C. § 1367(a), codified under INA section 384 states in relevant part:

> "(a) In General.  Except as provided in subsection (b), in no case may the Attorney General or any other official or employee of the Department of Justice (including any bureau or agency of such Department)—
>
> (1) make an adverse determination of admissibility or deportability of an alien under the Immigration and Nationality Act using information furnished solely by –
>
> (A) a spouse or parent who has battered the alien or subjected the alien to extreme cruelty,...." *See 8 U.S.C. § 1367(a) (2018).*

19.    In implementing 8 U.S.C. § 1367(a) the U.S. Department of Homeland Security ("DHS")[1] issued Directive Number 002-02 on November 1, 2013 ("Directive"). The Purpose of the Directive was to establish "...a single Department of Homeland Security policy regarding the implementation of Title 8, United States Code (U.S.C.), Section 1367, (Violence Against Women Act (VAWA) confidentiality purposes)...." *See; TAB A Attached hereto, Department of Homeland Security Directive Number: 002-02 Issue Date: 11/01/2013, IMPLEMENTATION OF SECTION 1367 INFORMATION PROVISIONS,* available at

https://www.dhs.gov/sites/default/files/publications/mgmt/community-and-social-services/mgmt-dir_002-02-implementation-section-1367-info-provisions_revision-00-1.pdf (last accessed, January 4, 2021). Specifically, the Directive instructs DHS employees that "[a]dverse determinations of admissibility or deportability against an alien are not made using information

---

[1] DHS is the umbrella Department of which the USICS in a component part of. *See, Homeland Security Act (HSA) of 2002, Pub. L. 107-296 (enacted November 25, 2002).*

furnished solely by prohibited sources associated with battery or extreme cruelty, sexual assault, human trafficking or substantial physical or mental abuse, regardless of whether the alien has applied for VAWA benefits, or a T or U visa." *See Id. at p. 3 ¶ 4.* The Directive further went on the state "[i]f a DHS employee receives adverse information about a victim of domestic violence, sexual assault, human trafficking or an enumerated crime from a prohibited source, DHS employees should treat the information as inherently suspect and exercise all appropriate prosecutorial discretion with respect to pursuing the adverse information. Further, DHS employees receiving information solely from a prohibited source do not take action on that information unless there is an independent source of corroboration." *See Id. at p. 3-4.*

20.     It was under this legal backdrop that Mrs. Nakityo married her first spouse and abuser Mr. Larkin on August 25, 2008 in Waltham, Massachusetts. Mr. Larkin subsequently filed a visa petition for Mrs. Nakityo on or about February 27, 2009.

21. On May 26, 2009 Mr. Larkin and Mrs. Nakityo appeared for an interview on Mr. Larkin's visa petition at the USCIS Boston Field Office. At that interview, Mr. Larkin and Mrs. Nakityo proffered good faith bona fide evidence in support of their marriage to include, but not be limited to: lease agreement and rent receipts, life and health insurance, reference letter from Citizen's Bank and joint account Citizen's bank statements, NSTAR, National Grid and RCN Utility Bills for the marital home, as well as a variety of pictures of the marital couple.

22. However, notwithstanding the good faith bona fide evidence spanning the duration of their relationship, on the day at the interview, Mr. Larkin allegedly asserted that "…as of the May 26, 2009 interview, he had only met the beneficiary [purportedly] four times;…that the evidence submitted in support of the bona fide nature of the marriage was fake; and that he never intended to share a life with the beneficiary." *See TAB B, USCIS Decision (Dec. 26, 2017) p. 2 at ¶ 5.*

21.     Mr. Larkin at that time purportedly executed a written statement wherein the USCIS asserts Mr. Larkin wrote: "I, Jason Edward Larkin, no longer wish to pursue the I-130 for Alien Relative that I filed on behalf of Mary Bayiyana. I was paid $2,700 to marry her so she could get her green card." *See, Id. p.2-3.*  At the interview Mr. Larkin then proceeded to withdraw his petition. The USCIS acknowledged Mr. Larkin's withdrawal and denied Ms. Nakityo's application for adjustment of status.

22.     After the May 26, 2009 USCIS interview Mrs. Nakityo remained in a relationship with Mr. Larkin. *See TAB C, VAWA Declaration of Mrs. Nakito at ¶ 9.* Mrs. Nakityo asserts that she became pregnant with Mr. Larkin's child and had a miscarriage in 2009. *See Id.* Mrs. Nakityo asserts that her marriage to Mr. Larkin was physically and sexually abusive between the fall of 2009 until early 2011. *See Id. at ¶¶ 9-11.* Thereafter, Mr. Larkin left the marital home. *See id.*

23. In September 2011, Mrs. Nakityo sought treatment for depression and was evaluated by Dr. Emily A. Carey, Ph.D a licensed psychologist. *See generally, Emily A. Carey, Ph.D.: Psychological Evaluation of Mary Nakityo Larkin in reference to a VAWA Petition.* In the 24-page report Mrs. Nakityo described in detail the physical, sexual and psychological abuse she suffered at the hands of Mr. Larkin. *See Id.* After a thorough evaluation Dr. Carey concluded that Mrs. Nakityo suffered from "Major Depression" and "Post-Traumatic Stress Disorder". *See id, at ps. 13-14.*

24.     On June 25, 2012, Mrs. Nakityo filed a self-petition I-360 VAWA Application ("Self-Petition") seeking to procure her green card as the battered-spouse of a United States citizen. The USCIS VAWA Unit in St. Albans, Vermont receipted in the Self-Petition on June 25, 2012. *See, I-797C Notice Of Action USCIS I-360 Receipt* dated June 28, 2012. Thereafter, on June 25, 2012 the Self-Petition was screened by a USCIS officer for prime facie evidence of each of the

elements necessary for approval of the Self Petition to include "Evidence of Battery and/or Extreme Cruelty".[2] *See TAB E, USCIS VAWA Prima Facie and Adjudication Checklist (June 25, 2012).* The USCIS VAWA officer indicated that Mrs. Nakityo met every element for a prima facie eligibility determination except for evidence of good moral character[3]. *See id.* The USCIS VAWA Officer issued a routine Request for Evidence ("RFE") for a background check, which Mrs. Nakityo lacking any criminal record dutifully complied with.

25. Thereafter, approximately two (2) years went by before the USCIS took further action on the Self-Petition.  On or about June 1, 2015 the USCIS issued a Request For Evidence where the USCIS asked for further evidence of the relationship with Mr. Larkin and the abusive nature of it. By this time Mrs. Nakityo had recently had a child, Gabriella Getrude Nabukalu with William Wagumbulizi ("Mr. Wagumbulizi") . *See TAB D, Birth Certificate of Gabriella Getrude Nabukalu,* The child was born on March 1, 2015. *See id.* Mrs. Nakityo by this time years later was in a relationship with Mr. Wagumbulizi. Mrs. Nakityo did not wish to relive the abusive relationship with Mr. Larkin and she decided she no longer wished to pursue the Self-Petition. The Self-Petition was denied for abandonment on November 19, 2015. Mr. Wagumbulizi and Mrs. Nakityo married and on December 16, 2016. Mr. Wagumbulizi, a United States citizen, then filed the Petition which is the subject of this action.

26.     The Petition was approved by the USCIS on April 21, 2017. On August 31, 2017 the USCIS sent Mr. Wagumbulizi a "Notice of Intent to Revoke" or "NOIR" indicating that the USCIS was intending to revoke the recently approved Petition because the USCIS purportedly

---

[2] The 7 elements necessary to establish VAWA eligibility are: 1. Existence of the qualifying relationship; 2. Citizenship or immigration status of the abuser; (3) Self-Petitioner's eligibility for classification; 4. Evidence that the self-petitioner and abuser resided together during the qualifying relationship; 5. battery or extreme cruelty; 6. good moral character; 7. Evidence of good faith marriage.
[3] Immigration and Nationality Act (INA) Section 204(a)(1)(C) generally requires 3 years of good moral character proceeding the filing at the VAWA self-petition with no disqualifying criminal convictions.

Case 1:21-cv-10427-RGS   Document 1   Filed 03/11/21   Page 11 of 16


had "substantial and probative evidence" in the Plaintiff's file that Plaintiff previously attempted

to evade immigration laws by entering into a sham marriage with Mr. Larkin. On or about

September 22, 2017 Mr. Wagumbulizi responded to the NOIR. On December 26, 2017 the

USICS issued its DECISION revoking the Petition and thereby barring Mrs. Nakityo indefinitely

from ever being the approved beneficiary of any visa petition pursuant to 8 U.S.C. § 1154(c). *See*

*generally, USCIS DECISION, Dec 26 2017.*

27.  The December 26, 2017 USCIS DECISION is predicated almost exclusively on the

statements and assertions of abuser Mr. Larkin. The USCIS under "Statement of Facts and

Analysis, Including Ground(s) for Revocation" states:

> "On May 26, 2009, both Mr. Larkin and [Mrs. Nakityo] appeared at the Boston
> Field Office for an interview....At the Interview, Mr. Larkin executed a sworn
> statement indicating that he married the beneficiary solely to circumvent the
> immigration laws. Specifically, Larkin admitted that as of May 26, 2009
> interview, he had only met [Mrs. Nakityo] four times; the he married [her]
> in exchange for money; ...that he and the beneficiary never lived together...."
> See, Decision at p. 2, ¶ 9.

28. Abuser Mr. Larkin then purportedly submitted a request to withdraw his petition. Abuser

Larkin purportedly wrote[4]: "I, Jason Edward Larkin, no longer wish to pursue the I-130 for Alien

Relative that I filed on behalf of Mary Bayiyana. I was paid $2,700 to marry her so she could get

her green card." *See, Decision at p. 2-3, ¶ 10.*

---

[4] The USCIS never provided Mr. Wagumbulizi or Mrs. Nakityoa copy of the statement to inspect and it was not
included in her Freedom of Information Act (FOIA) request. Plaintiff asserts this is counter to USCIS rules and
regulations: "The adjudicating officer must keep in mind the fact that the petitioner must be given the opportunity
to inspect and rebut any adverse information used in arriving at the decision to deny or revoke a petition. The
one exception pertains to material classified under E.O. 12356. In accordance with 8 CFR
103.2(b)(16)(iv) , the petitioner must still be given a summary (authorized by a regional director) of the
general nature of the information and the opportunity to rebut it if it can be done without jeopardizing the
safety of the information and the source. (See Matter of Tahsir, 16 I&N Dec. 56 (BIA 1976) and Chapter
10.19 of this field manual.) See, USCIS Adjudicator's Field Manual, available at:
https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm21-external.pdf (last accessed: Feb.
18, 2021)

29.     This evidence provided by abuser Mr. Larkin is the but for causation of the USCIS Revocation.

30. The Defendants' had no rational basis in fact or law, or promulgated in any regulation thereunder, or citied anywhere in their USCIS adjudicator's field manual to revoke the Petition for any other reason other than Mr. Larkin's unilateral and uncorroborated statements and any assertion to the contrary by Defendants is merely a pretext.

31. Further, no other fact or allegation Defendants suggest in the Decision would independently or in the aggregate warrant the Petition's revocation or the application of the 8 U.S.C. § 1154(c) bar; it would run contra to Defendants' common custom and practice in other similarly situated cases and would be asserted a merely a pretext to apply a bar premised in reality on the use of protected and illegal information.[5]

32. Mr. Wagumbulizi appealed the Decision to the BIA. True to form, the BIA seemed to dismiss out of hand Mr. Wagumbulizi's assertion that Mr. Larkin's statements were precluded under 8 U.S.C. § 1367(a). In its March 29, 2019 decision ("BIA Decision") the BIA dismissively threw away Mrs. Nakityo's claims of abuse as "self-serving and unsupported", even though her VAWA claim was filed seven (7) years before the instant Petition. *See TAB F, BIA Decision, p. 2 at ¶ 5.* The BIA further sided with the USCIS Director that the Director "reasonably found unpersuasive the petitioner's argument" that Mr. Larkin's statements should be barred unless corroborated pursuant to 8 U.S.C. § 1367(a). The BIA provided no other reasoning to support a departure from the plain meaning of the statute other than to add "…[the] Form I-360 [Self-abuse petition] was not relevant to the revocation of the current visa petition." *See, id.* The BIA

---

[5] See, *Matter of P. Singh, 27 I & N Dec. 598 (BIA 2019)* (holding "the standard of proof necessary to bar the approval of a visa petition based on marriage fraud under ...8 U.S.C. § 1154(c) is 'substantial and probative evidence' ...more than a preponderance of evidence, but less than clear and convincing; that is, the evidence has to be more than probably true that the marriage is fraudulent."

Decision then went on to fully credit abuser Mr. Larkin's statement stating "Mr. Larkin's sworn statement plainly and unequivocally states that he was paid to marry the beneficiary in order to obtain her "green card". *See, Id. p. 3 at ¶2.*

33. The administrative record is devoid of any evidence to corroborate anything Mr. Larkin said regarding payment for marriage, purported "fake" evidence submitted or any other assertion Mr. Larkin made.

34. The BIA Decision by affirming the revocation and 8 U.S.C. § 1154(c) bar made the Petition's revocation administratively final.

## FIRST CLAIM FOR RELIEF

### (Violation of the Immigration and Nationality Act, 8 U.S.C. § 1367(a); Administrative Procedure Act, 5 U.S.C. § 706(2))

35. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

36. The USCIS's and BIA's use of Mr. Larkin's uncorroborated statements regarding the bona fide nature of his marriage to Mrs. Nakityo, when the administrative record contained clear evidence of Mr. Larkin being an abusive spouse, to revoke Mr. Wagumbulizi's Petition and forever bar Mrs. Nakityo of being the beneficiary of any subsequent visa petition was ultra vires and violated the plain meaning 8 U.S.C. § 1367(a).

37. Therefore, the application herein of 8 U.S.C. § 1367(a) violated not only the plain meaning of this unambiguous statute, entitled no agency deference, it also violated 5 U.S.C. §706(a)(A), (C), (D) as it was done "not in accordance with the law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "without observance of procedure required by law...."

13

## SECOND CLAIM FOR RELIEF

**(Violation of the Immigration and Nationality Act, 8 U.S.C. § 1367(a) as applied per agency implementation in "Department of Homeland Security DHS Directive System, Directive Number: 00, Issue Date 11/1/2013"; Administrative Procedure Act, 5 U.S.C. § 706(2))**

38. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

39. Even if 8 U.S.C. § 1367(a) is an ambiguous statute subject to agency deference the USCIS, DHS and the BIA violated its own regulations in its November 1, 2013 Directive when the agency used Mr. Larkin's uncorroborated statements regarding the bona fide nature of his marriage to Mrs. Nakityo to render her inadmissible.

40. The administrative record contained clear evidence of Mr. Larkin being an abusive spouse, and the USCIS's own VAWA unit specializing in these cases acknowledged said abuse in its prime face check list. Therefore, this action of revoking Mr. Wagumbulizi's Petition and forever barring Mrs. Nakityo of being the beneficiary of any subsequent visa petition in this manner was ultra vires and violated the agencies own regulation under 8 U.S.C. § 1367(a).

41. Therefore, the application herein of 8 U.S.C. § 1367(a) when applied by the USCIS's November 1, 2013 Directive violated 5 U.S.C. §706(a)(A), (C), (D) as it was done "not in accordance with the law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "without observance of procedure required by law...."

## THIRD CLAIM FOR RELIEF

**(Violation of the Immigration and Nationality Act, 8 U.S.C. § 1154(c); Administrative Procedure Act, 5 U.S.C. § 706(2))**

42. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

43. The USCIS and the BIA misapplied 8 U.S.C. § 1154(c) when it relied on uncorroborated, ultra vires, "inherently unreliable" and protected information when it revoked the Petition

premised on this information and barred Mrs. Nakityo in perpetuity from ever being the beneficiary of this Petition or any subsequent visa petition filed on her behalf.

44. Therefore, the application herein of 8 U.S.C. §1154(c) when applied by the USCIS and affirmed by the BIA violated 5 U.S.C. §706(a)(A), (C), (D) as it was done "not in accordance with the law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "without observance of procedure required by law...."

## FOURTH CLAIM FOR RELIEF

### (Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution); Administrative Procedure Act 5 U.S.C. § 706(2)(A))

45. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

46. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall...be deprived of life, liberty, or property, without due process of law...." Marriage is a fundamental longstanding liberty right. Defendants violated and abridged this liberty right when they denied due process to Plaintiffs and revoked the marital Petition by "arbitrary, capricious, an abuse of discretion, or other [manner] otherwise not in accordance with the law."

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray this Court to:

a. Declare the USCIS's Revocation of the Petition contrary to the law and in violation of due process;

b. Declare the BIA's affirmance of the revocation of the Petition contrary to the law, arbitrary, capricious, an abuse of discretion and in violation of due process;

c.  Declare the USCIS's application of 8 U.S.C. § 1154(c) against Mrs. Nakityo contrary to the law, arbitrary, capricious, an abuse of discretion.

d.  Declare the BIA's affirmance of the application of 8 U.S.C. § 1154(c) against Mrs. Nakityo contrary to the law, arbitrary, capricious, an abuse of discretion.

e.  Enter an order approving the Petition.

f.  Award Plaintiffs' counsel reasonable attorney's fees under the Equal Access to Justice Act, and any other applicable statute or regulation;

g.  Award nominal damages;

h.  Grant such further relief as the Court deems just, equitable, and appropriate.


The Plaintiff's request trial by jury on all claims if so triable.


Date: February 26, 2021                                Respectfully submitted,


                                                       /s/ Richard S. Cabelus

                                                       _____
                                                       Counsel for Plaintiffs
                                                       Law Office of Richard S. Cabelus
                                                       390 Main Street, Ste 541
                                                       Worcester, MA 01608
                                                       (508) 762-9199
                                                       Richard@cabelus.com
                                                       MA BBO# 674919